## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
### Civil Action: 1:21-cv-705

| | | |
|---|---|---|
| **TONI BLANTON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **COMPLAINT** |
| | ) | |
| **Sun Life Assurance Company** | ) | |
| **Of Canada;** | ) | |
| **Employee Group Benefits Plan** | ) | |
| **Of The Nature Conservancy; and,** | ) | |
| **The Nature Conservancy** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

**NOW COMES** the plaintiff, Toni Blanton, by and through her counsel, and complaining against the defendants, she states:

### *Jurisdiction and Venue*

1.     Jurisdiction of the Court is based upon the Employee Retirement Income Security Act of 1974 ("ERISA"); and in particular, 29 U.S.C. §§ 1132(e)(1) and 1132(f).  Those provisions give the District Court jurisdiction to hear civil actions brought to recover benefits due under the terms of an employee welfare benefit plan, which, in this case, consists of group-long term disability ("LTD") insurance coverage and group life insurance coverage underwritten and administered by the **Sun Life Assurance Company Of Canada** ("Sun Life"), for the benefit of employees, including Plaintiff, of **The Nature Conservancy** under Policy Number 11251.  **Exhibit 1**.  Additionally,

this action may be brought before the Court pursuant to 28 U.S.C. §1331, which gives the District Court jurisdiction over actions that arise under the laws of the United States.

2.     The ERISA statute provides, at 29 U.S.C. § 1133, a mechanism for administrative or internal appeal of benefit denials.  Those avenues of appeal have been exhausted.

3.     Venue is proper in the Middle District of North Carolina pursuant to 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391.

## Nature of the Action

4.     This is an action seeking recovery of disability benefits, as well as a life insurance waiver of premium, claimed to be due under an employee welfare benefit plan which provided the insured with group long-term disability benefits and life insurance benefits, inclusive of a waiver of premium, on account of the employee's disability. This action is brought pursuant to ERISA § 502(a)(1)(B) (29 U.S.C. § 1132(a)(1)(B)), seeking benefits due; and under that section, or, in the alternative, under ERISA § 502(a)(3) for prejudgment interest.   Plaintiff also seeks attorneys' fees pursuant to 29 U.S.C. § 1132(g) and ERISA § 502(g).

## The Parties

5.     The Plaintiff, Toni Blanton, now age 56 (born 1965), was at all times relevant hereto a resident of Hillsborough, North Carolina; and the events, transactions, and occurrences relevant to Plaintiff's claim of disability took place predominately within the Middle District of North Carolina.  At the onset of her disability, Plaintiff was an

"employee" of The Nature Conservancy, within the meaning of 29 U.S.C. § 1002(6); and a "participant" of the Employee Group Benefits Plan of The Nature Conservancy, within the meaning of 29 U.S.C. § 1002(7).

6.     The Defendant, **Sun Life Assurance Company Of Canada** ("Sun Life"), is a foreign insurance company selling policies and conducting other business throughout the United States including, *inter alia*, substantial activity within the Middle District of North Carolina. Sun Life provides long term disability (LTD) and life insurance coverage for North Carolina employers, including the Plan providing benefits for employees of The Nature Conservancy, Group Policy No. 11251. As such, Sun Life is obligated under its policy described herein to pay all such benefits to which Plaintiff may be entitled. At all times, Defendant Sun Life acted as an "Administrator" of the Plan or an agent of The Nature Conservancy in that regard. Upon information and belief, Sun Life insures and administers the Plan for employees of The Nature Conservancy.

7.     The Defendant, Employee Group Benefits Plan of The Nature Conservancy (the "Plan"), is an "employee welfare benefit plan," as defined in 29 U.S.C. § 1002(1), sponsored and administered by The Nature Conservancy, providing benefits, including long term disability insurance benefits for Nature Conservancy employees.

8.     The Defendant, The Nature Conservancy, is a nonprofit corporation organized and existing under the laws of the District of Columbia, headquartered in Arlington, Virginia. At all times pertinent to this action, The Nature Conservancy was an

"employer" of Plaintiff within the meaning of 29 U.S.C. § 1002(5), and the "Plan Sponsor" and a "Plan Administrator" of the Plan, within the definitions and meanings of 29 U.S.C. § 1002(16).

9. At all times relevant hereto, the LTD and Life Insurance Policies constituted "employee welfare benefit plans" as defined by 29 U.S.C. § 1002(1). Incident to her status as an employee of The Nature Conservancy, Plaintiff received coverage under the Policy as a "participant" as defined by 29 U.S.C. § 1002(7).

10. Defendant Sun Life is obligated to pay all benefits to which Plaintiff may be entitled under the Plan.

11. At all times relevant to this action, Plaintiff has been a covered beneficiary under the Nature Conservancy Long-Term Disability Plan. The Plan provides group long-term disability benefits for eligible employees of The Nature Conservancy.

12. Upon information and belief, The Plan and Plan Sponsor have delegated all LTD claims administration responsibility to Defendant Sun Life.

13. Upon information and belief, Defendant Sun Life is responsible for making all LTD benefit determinations and for paying all LTD benefits from Sun Life's own funds.

14. Upon information and belief, benefits under the LTD Policy are payable each month through a maximum duration of the end of the calendar month the claimant reaches Social Security normal retirement age.

15. At all times herein alleged, each Defendant was the agent, employee, and joint venturer of each of the other Defendants, and in doing the things herein described,

4

was acting either as an individual or within the scope of its authority of such agent, employee or joint venturer. The acts and conduct alleged herein of each Defendant were known to, authorized and ratified by each remaining Defendant.

### Statement of Facts

16. Plaintiff Toni Blanton, a 1986 graduate of Duke University (B.A., Economics), was, from 2000, successfully employed on a full-time basis with The Nature Conservancy as an Operations Manager, Finance Communications Specialist, and Finance Administrator; in 2013 she was promoted to Training and Support Administrator for Finance and SAP Concur travel and expense management services and related information systems.

17. Plaintiff has long struggled with multiple chronic, progressive and degenerative diseases. Plaintiff's medical records reveal a diagnostic history that includes Degenerative Disc Disease ("DDD") (cervical, thoracic, and lumbosacral), Fibromyositis, Myofascial Pain, Impaired Balance, Osteoarthritis, Patellofemoral Chondromalacia, and Spinal Stenosis, as well as tinnitus, migraine headaches, vitreous detachment, Irritable Bowel Syndrome (IBS) and depression; Plaintiff has also suffered from the side-effects of her several prescription medications, including memory and concentration difficulties. In late 2014 Claimant's health deteriorated significantly and, after medical consultations and diagnostics, Mrs. Blanton was referred for a twelve-week course of intensive physical therapy. Plaintiff struggled to complete her treatments, but the exertion of fully doing so while working full time proved

5

overwhelming. Mrs. Blanton's health continued to deteriorate, and on February 25, 2016, she requested a partial leave from her employer so as to be able to fully participate in physical therapy and regain some measure of her previous level of functioning. Plaintiff's condition improved as she responded to the therapy, and in June of 2016, Mrs. Blanton returned to her job. However, after several months of returning to full-time work, her health again deteriorated.

18.    Nearly a year after her return to full-time work, Plaintiff began to question whether she could continue to perform her full-time job. Mrs. Blanton's principal treating physician, Dr. Dina Eisinger,[1] observed of Mrs. Blanton, "[i]t's really amazing to me that she has worked as long as she has. She is miserable. She cannot work for long at a time. She feels foggy with the pain, fatigued, distracted." **Dr. Eisinger,** *Physician Notes*, June 13, 2017, **Exhibit 2**. Similarly, Dr. Linda Belhorn,[2] Plaintiff's treating rheumatologist, noted, "because of her significant difficulties with increasing pain, increasing cognitive problems . . . it is felt reasonable for her to consider disability." **Dr. Belhorn,** *Physician Notes*, April 3, 2017, **Exhibit 3**. Plaintiff requested her employer, The Nature Conservancy, place her on long term leave effective November 1, 2017, and Mrs. Blanton ceased working at that time. As Mrs. Blanton focused on

[1] Dina Eisinger, MD; MD Yale University School of Medicine, American Board of Physician Medicine and Rehabilitation Certified.

[2] Linda Belhorn, MD, RhMSU; MD University of North Carolina – Chapel Hill, American College of Rheumatology Certified.

Case 1:21-cv-00705-WO-JEP   Document 1   Filed 09/09/21   Page 6 of 21

her rehabilitation, her health again improved. **Dr. Eisinger,** *Physician Notes*, February 19, 2018, **Exhibit 2**.

19. On March 8, 2018, Dr. Eisinger approved a six-month, part-time, trial return to work with significant restrictions. **Dr. Eisinger,** *Physician Notes*, March 8, 2018, **Exhibit 2**. Plaintiff's employer created a part-time, temporary position for her of 25 hours per week in 2.5-hour shifts, and she began the trial return to work on March 12, 2018. However, soon thereafter Mrs. Blanton's health again began to deteriorate. **Dr. Eisinger,** *Physician Notes*, March 27, 2018, **Exhibit 2**. Plaintiff then requested a further reduction in her working hours, and on May 5, 2018, her trial employment hours were reduced to twenty (20) hours per week, the level at which she has largely remained.

20. To be deemed "disabled" under the Policy, a Claimant must, "because of Injury or Sickness, [be] unable to perform the Material and Substantial Duties of his [sic] Own Occupation," and after 24 months, the Claimant continues to be deemed "disabled" "if he is unable to perform with reasonable continuity any Gainful Occupation," defined as employment that provides an income of at least 60% of the Claimant's indexed earnings before the onset of the disability. **The Nature Conservancy,** *Group Term Insurance Policy*, pp. 14-15, **Exhibit 1**.

21. As described above, Plaintiff ceased working her full-time position in November 2017, and subsequently, beginning in March 2018, Plaintiff, with the assistance of her employer, performed limited work duties in a part-time, trial return to work with

7

significant restrictions. Defendant, neither in its November 29, 2017, *Notification of Denial of Long-Term Disability Benefits*, nor in any other communication, has indicated that its Denial is based upon the dates worked or not worked by Plaintiff, the number of hours she continued to work, her current earnings, nor any other such issue.

22. Defendant concedes that Plaintiff suffers from the combined effects of several painful, debilitating, and progressive chronic diseases that cause multiple significant bodily impairments that have, over a period of years, required a variety of increasing work restrictions and limitations. *See, e.g.*, **Moshe Lewis, MD, MBA**, *Peer Review*, January 26, 2018, p. 10, **Exhibit 4**. Therefore, the gravamen of Defendant's Denial of Long-Term Disability benefits appears to be that Mrs. Blanton's significantly reduced work performance is not, as Plaintiff contends, the result of the diseases from which she undeniably suffers, but rather that her reduced work performance has occurred because of something other than those diseases. An alternative explanation for the chronically ill and impaired Plaintiff's significantly reduced work performance has never been provided by Sun Life or its medical consultants. By "cherry-picking" the record, requiring "objective" proof for the severity of Plaintiff's reports of pain and debility, while ignoring or discounting the observations and conclusions of her treating physicians, Defendant Sun Life denies the causal connection between the diseases from which Mrs. Blanton objectively suffers, and the pain and debility that prevents her from continuing to engage in her employment on a full-time basis.

23. Plaintiff initially applied for LTD benefits in about late September 2017, and was

notified in writing on November 29, 2017 that her initial claim was denied because, Defendant asserted, the objective medical evidence of "cervical disc disease, lumbar disc disease, myofascial pain, cognitive issues," and other conditions was insufficient to prove that "she was unable to perform the material and substantial duties of her occupation." **Sun Life**, *Letter of November 29, 2017*, **Exhibit 5**.

24.     Realizing that Defendant Sun Life had failed to obtain key medical records before deciding that insufficient evidence supported her claims, on December 12, 2017, Plaintiff timely requested reconsideration of her claim and submitted some of the missing medical records that she had obtained. After further discussions with Defendant's representatives caused her to suspect that Defendant Sun Life was not reviewing her claim in good faith, Plaintiff engaged counsel to assist her with the claims process.

25.     In April 2018, Plaintiff Toni Blanton, by and through counsel, submitted a formal *Request for Review of Denial* and further requested that Defendant toll the review period so that the Claimant could supply "the additional material information necessary for an accurate determination of her application for Long Term Disability benefits." Plaintiff also formally appealed the denial of the Waiver of Premium for Group Life Insurance benefits, as well as the Retro Disability benefit. Finally, Plaintiff requested,

> Sun Life immediately cease any in-process medical review or other undertakings related to Ms. Blanton's claim until her complete file can be submitted for such review or analysis[.] Ms. Blanton's complete medical and vocational file will contain materials that are significantly greater than and additional to that previously obtained by Sun Life . . . .

9

*Request for Review of Denial*, **Exhibit 6**. In light of the fact that Defendant did not, in fact, stop its medical review process until a more accurate assessment of Plaintiff's disability claim could be conducted, this request, and the failure to honor it, is significant.

26. The *Request for Review* also noted other problems with Defendant's claims process. Sun Life had seriously miscalculated Ms. Blanton's Total Monthly Earning, apparently by using old bi-weekly payment information instead of the then-current monthly total. Plaintiff submitted copies of her most relevant paystub, dated November 10, 2017, showing a Biweekly Pay Rate of $3,212.27, and recalculated her Total Monthly Earnings as $6,959.92, with a Gross Monthly Benefit of $4,275.95. Defendants have never refuted this recalculation of the benefit basis. The *Request for Review* also noted problems with Sun Life's Vocational Assessments and indicated that Plaintiff would be supplying a comprehensive Vocational Assessment from a noted expert in the field. *Request for Review of Denial*, **Exhibit 6**. Finally, the *Request for Review* included a copy of Dr. Eisinger's *Clinic Note* from March 27, 2018, in which Dr. Eisinger specifically reviewed and rebutted the analyses of Sun Life's Physician Advisor and psychiatric Consultant that provided the basis for Defendant's initial denial of November 29, 2017.

27. Dr. Eisinger's rebuttal of Defendant's non-treating expert reviewers was scathing. Dr. Eisinger observed that Defendant's reviewer stated that "all the findings were normal on the note of 09/05/17" while in fact the patient "did not appear for her appointment

with me on 09/05/17. Apparently she was late and was therefore rescheduled so I think it is a mistake to interpret a no-show appointment as an appointment where all the findings were normal." Moreover, regarding "the [reviewer's] statement that the imaging studies revealed degenerative changes not severe enough to cause functional impairment when performing work," Dr. Eisinger explained,

> first of all, the ability to perform work is not something that is solely determined by the severity of the imaging studies, secondly, much of this lady's pain is myofascial in nature and would not be expected to be diagnosable by imaging studies, so . . . to say that simply because degenerative changes are not severe that she must be able to work is a mistake. Not everything is easily measurable. Not everything is easily objectifiable, but this is a patient whose complaints have been consistent, undramatic, she has worked for a long time, she has a very good employment record, and she certainly has findings consistent with a lot of myofascial pain on exam, even if the degenerative changes on imaging studies are not that severe.

**Dr. Eisinger,** *Physician Notes*, March 27, 2018, **Exhibit 2**. Dr. Eisinger further explained that "one has to consider both subjective and objective information when talking about disability, and in considering subjective information, one has to consider the consistency of it and the believability of it, both of which are very high in this case."

Dr. Eisinger continued:

> the patient's condition is more critical than the imaging studies taken by themselves, but also . . . it is incorrect to say that the findings on the imaging studies were mild. The radiologist reported the MRI of the lumbar spine on 07/29/17 . . . as follows: "Multilevel lumbar spine degenerative change, most pronounced at L4-5 with moderate to severe spinal canal stenosis, multiple levels of neuroforaminal narrowing up to severe narrowing on the right at L4-5." In my view, that would not be accurately described as mild findings. In terms of the radiologist's report of the MRI of the cervical spine dated 06/24/17, the impression reads "Multilevel spondylosis most pronounced from C-4 to C7 for which there are disc osteophyte complexes contributing to moderate spinal canal stenosis and moderate to severe neuroforaminal narrowing as described." Again, I think it would be inaccurate to describe

11

these as mild.

I disagree with the following points made by [Sun Life's physician consultant]:

1.  That there are no records since September[.] I have reviewed those additional records in this note today.

2.  That the imaging findings were mild. That is reviewed just above.

3.  [T]hat the patient's complaints are consistent and believable even in the subjective components.

4.  [T]hat . . . September 5 . . . is not accurately interpreted as a day when all of the physical exam findings were normal, but simply that she was not seen that day.

**Dr. Eisinger,** *Physician Notes,* March 27, 2018, **Exhibit 2**.

28. By letter dated June 18, 2018, Defendant responded that it would "continue to toll the appeal review to allow you the opportunity to submit additional information in support of [Mrs. Blanton's] appeal and to allow Sun Life the opportunity to review the information." **Sun Life**, *Letter of June 18, 2018,* **Exhibit 5**.

29. On or about July 18, 2018, Plaintiff submitted her *Response to Denial of Claim and Submission of Evidence.* The *Response and Submission* included key documents from Plaintiff's treating physicians that had not previously been considered in Sun Life's decision-making process, a comprehensive Vocational Evaluation and Earning Capacity Assessment report by a highly regarded rehabilitation and vocational expert, and an organized and complete copy of all of Plaintiff's relevant medical records. Plaintiff's *Response* also noted the many procedural inadequacies in Defendant's claims process and methods of analysis. *Response to Denial of Claim*, **Exhibit 7**.

30. Although the medical records that Defendant had previously obtained for Plaintiff's

claim determination were manifestly materially incomplete, both Sun Life staff and its professional consultants nevertheless went ahead and determined the claim using conjectural assumptions based upon the absence of supporting material. Further, these speculation-based conclusions were directly contrary to the assessments and opinions of Plaintiff's treating physicians. Little attempt was made by Defendant Sun Life to ensure the completeness of the medical record, nor was Plaintiff adequately informed of the "additional material or information necessary for [her] to perfect the claim." 29 CFR § 2560.503-1. Plaintiff's primary treating physician, Dina Eisinger, MD, reviewed the reports of the medical consultants upon which Defendant's denial decision relied and pointed out that the incomplete condition of the records under review should have been obvious; moreover, Sun Life continued to seek outside consultant review of the materially incomplete file even after Plaintiff's *Request for Review* put Sun Life on Notice that its file was materially incomplete.

31. Determining a claimant's eligibility for an employee benefit is not supposed to be an adversarial process; a claimant must be given a full opportunity to develop the record that will serve as the basis for determining her claim, and to respond to the evidence, rationales, and guidelines relevant to the decision.

32. Plaintiff's *Response to Denial of Claim* also observed that after Plaintiff's initial *pro se* request for reconsideration of her claim on December 12, 2017, but before obtaining all missing medical records, Defendant Sun Life contracted for another medical review, this time from Moshe Lewis, MD, MBA, whose C.V. identifies as, *inter alia*,

13

an "expert on medical business operations and efficiency." Like Defendant's first medical consultant, Dr. Lewis ostensibly supports Plaintiff's treating physicians' diagnoses, including lumbar degenerative disc disease (DDD), cervical DDD, myofascial pain, neck pain, fibromyalgia, cervicalgia, cervical radiculitis, and lumbar radiculopathy; Dr. Lewis also agreed that objective data supported the Plaintiff's diagnoses, and that Mrs. Blanton had been compliant with her doctors' orders, and that she has chronic neck and back pain; Dr. Lewis concedes that "physical limitations and restrictions are supported based on the data reviewed." Nevertheless, Dr. Lewis ignores the conclusions of Plaintiff's treating physicians, and determined that "there is not any medical support for Mrs. Blanton being unable to perform activities on a sustained basis in an 8-hour day and a 40-hour work week." **Moshe Lewis, MD, MBA**, *Peer Review*, January 26, 2018, pp. 8-10, **Exhibit 4**.

33. The record as a whole provides more than substantial evidence to support the conclusions of Plaintiff's multiple treating physicians: Mrs. Blanton is unable to perform the Material and Substantial Duties of her Own Occupation because of "Sickness," *i.e.*, that she is "disabled" as that term is defined by the Group Term Insurance Policy. The evidence produced by Sun Life's physician contractors consists of "cherry picking" the raw data of Plaintiff's treating physicians while ignoring the doctors' findings and conclusions. Defendant has failed to explain why it rejects the findings and conclusions of Plaintiff's well-regarded attending and specialist physicians.

34. Defendant's Vocational Assessments and Occupational Analysis are similarly replete with "cherry picked" data and conjectural assumptions, as identified by both Plaintiff's treating physicians and her rehabilitation and vocational expert, Ann T. Neulicht, Ph.D.[3] At the most basic level, Sun Life's "Occupational Analysis" merely looks at the modest physical demands of any given moment of Plaintiff's sedentary job, without considering how the *sequelae* of her diseases and medical conditions – chronic pain, fatigue, debility, and the use of medications that affect memory, executive function and concentration - impact her ability to actually function productively over an eight hour day and forty-hour week. To say that someone has the physical ability to perform a particular task is not the same as saying that the person is able to function effectively in a full-time job. Both Dr. Eisinger and Dr. Belhorn specifically address this point and refute the conclusions of Defendant. "[I]n order to be able to function as an employee in a job that requires certain physical demands, one has to be able to do those demands not some days but every day and that is a terrible problem with pain conditions that cause good days and bad days such as that of Mrs. Blanton." Dr. Eisinger also pointed out Dr. Lewis' misconstructions of her clinic notes, observing, for example,

> because my previous restrictions did not specifically say that she cannot sit for
> six to eight hours that was interpreted as meaning that she can sit continuously

---

[3] Dr. Neulicht is a Certified Life Care Planner, Certified Rehabilitation Counselor, Certified Vocational Evaluator, Certified Disability Management Specialist, Licensed Professional Counselor, and a Diplomate of the American Board of Vocational Experts.

for six to eight hours. I have stated in my restrictions that she . . . has difficulty with prolonged positioning including prolonged sitting . . . . Really this is something on which we need not theorize overly because Mrs. Blanton has made attempts at this job for over many, many years and has been quite worse [despite] these efforts.

**Dr. Eisinger**, *Physician Notes*, June 16, 2018, **Exhibit 2**.

35. Dr. Neulicht's report examined all relevant medical information, including both of Defendant Sun Life's physician reviews and Mrs. Blanton's treating physician records, conducted interviews with Mrs. Blanton and her primary treating physicians, and performed an extensive vocational review and analysis, including an interview with Plaintiff's former supervisor. Based on the evidence, Dr. Neulicht concludes that Plaintiff "is unable to perform the Material and Substantial Duties of her Own Occupation and unable to perform, with reasonable continuity, material and substantial duties of Any Gainful Occupation for which she is or becomes reasonably qualified for by education, training or experience." **Dr. Neulicht**, *Report*, p. 19, **Exhibit 8**.

36. By letter dated September 12, 2018, Defendant reported and explained that it had completed its review and determined to deny Plaintiff's claim; Defendant also represented that all administrative remedies had been exhausted and Plaintiff's right to bring a civil action was now available.

37. Defendant explained its decision as follows:

The medical evidence addressing Ms. Blanton's treatment for her physical complaints has been reviewed by multiple board-certified physicians who agree that Ms. Blanton does have restrictions and limitations. These restrictions and limitations would not prevent her from performing her

16

> occupation which we determined is performed at the sedentary range of physical demands. The evidence you submitted on appeal did result in Dr. Lewis adjusting his opinion regarding Ms. Blanton's restrictions and limitations; however, the adjusted restrictions and limitations still permit Ms. Blanton to perform her occupation.

**Sun Life**, *Letter of September 12, 2018*, **Exhibit 5**.

38.     Defendant's denial letter also revealed an important misunderstanding of Plaintiff's claims and her physician's conclusions regarding her disability.

> We learned during the appeal review that Ms. Blanton returned to work with The Nature Conservancy, albeit part-time. A review of the job description for this new position determined it is performed at the same level of physical demands (sedentary) required of the occupation . . . Ms. Blanton was performing prior to the date she is claiming disability. Dr. Eisinger completed a form . . . noting Ms. Blanton is incapable of functioning at the sedentary range of physical demands.

**Sun Life**, *Letter of September 12, 2018*, **Exhibit 5**.  However, neither Plaintiff nor her doctors ever said that the combined effects of her multiple impairments rendered her completely unable to perform any amount of sedentary work, but rather, that the *sequelae* of her diseases and medical conditions – chronic pain, fatigue, debility, and the use of medications that affect memory, executive function, and concentration - impact her ability to actually function productively over an eight-hour day and a forty-hour week.  The physical ability to perform a particular task is not the same as functioning effectively in a full-time job.  The Plaintiff clearly meets the definition of "disabled" under the Policy as she is unable to perform with reasonable continuity any employment that will provide an income of at least 60% of her indexed earnings before the onset of the disability.

17

39. Defendant's decision to deny benefits was based on a medical and vocational analysis obtained from biased and conflicted sources and which failed to accept the clinical findings and objective test results that established Plaintiff's ongoing disability.

40. Although Plaintiff appealed from Defendant's determination, her appeal was denied based on Defendant's bias and conflict inherent in its dual role as claim administrator and benefit payor which was manifested in its use of claim personnel and medical consultants who were determined to uphold the denial of benefits regardless of the evidence. Plaintiff thus remains entitled to LTD benefits and a waiver of life insurance premiums due since November 1, 2017, plus any interest that has accrued thereon; she is also entitled to a declaration of rights that her benefits remain payable thereafter so long as she continues to meet the Policy's terms and conditions.

41. Defendant's adverse decision was unreasonable, not based on substantial evidence, not the result of a deliberate, principled reasoning process, and constitutes an erroneous determination. Defendant did not provide reasonable claim procedures nor provided a full and fair review of Plaintiff's claim as required by the LTD Plan and ERISA. Instead, Defendant acted only in its own pecuniary interest and violated both ERISA and the LTD Plan through its unreasonable conduct described herein.

42. Defendant's unreasonable conduct includes, but is not limited to the following acts:

    a. designing the entire claim review process for the LTD Plan for the biased purpose of obtaining documentation to support a claim denial rather than adjudicating claims as a fiduciary;

    b. conducting a review of Plaintiff's claim in a manner calculated to reach the

desired result of denying benefits;

    c.  consulting biased medical personnel whom Defendant suspected would render opinions favorable to Defendant;

    d.  ignoring competent evidence of Plaintiff's disability and without credible contrary evidence;

    e.  failing to evaluate or adequately evaluate Plaintiff's medical conditions;

    f.  failing properly to consider and credit the medical opinions of Plaintiff's treating physicians without credible contrary evidence;

43.    Defendant had an inherent and substantial conflict of interest in administering Plaintiff's claim, by virtue of the fact that Defendant is both the insurer of the LTD Policy and payor of benefits, as well as the decision maker on whether benefits should be paid. Accordingly, Defendant has a pecuniary interest in denying claims under its LTD Policy.

44.    Defendant's pecuniary interest in denying LTD claims extends to Plaintiff's claim.

45.    The Court should review Defendant's adverse decision on Plaintiff's claim under a *de novo* standard. *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 956-57, (1989).

46.    In the alternative, Defendant's adverse decision on Plaintiff's claim constitutes an abuse of discretion.

## CLAIM FOR RELIEF: PLAINTIFF'S ENTITLEMENT TO LTD BENEFITS

47.    Plaintiff hereby incorporates the foregoing paragraphs as if fully set forth herein.

48.    As stated above, Plaintiff has been disabled from her full-time employment since

November 1, 2017 and has otherwise met the conditions of coverage under the LTD Plan. Plaintiff is entitled to LTD benefits from that time up to the present and continuing through the duration of her disability.

49. As a direct and proximate result of Defendants' violations of ERISA, Plaintiff has been deprived of her LTD and other related benefits to which she was entitled as a disabled employee of Defendant The Nature Conservancy.

50. Plaintiff is entitled to declaratory, equitable and injunctive relief establishing Plaintiff's entitlement to her LTD income and other benefits, pursuant to 29 U.S.C. § 1132(a)(1)(B).

51. Plaintiff is entitled to recover her attorney's fees for her representation herein pursuant to 29 U.S.C. § 1132(g).

### *Relief Sought*

**WHEREFORE**, Plaintiff prays for the following relief:

A. That the Court enter judgment in Plaintiff's favor and against the Defendants and that the Court order the Defendants to pay all accrued long-term disability benefits to Plaintiff in an amount equal to the contractual amount of benefits to which she is entitled, and which shall also order Defendant to restore Plaintiff's life insurance benefits under a waiver of premium on account of her disability;

B. That the Court order the Defendants to pay Plaintiff prejudgment interest on all benefits that have accrued prior to the date of judgment;

C. That the Court order Defendants to continue paying Plaintiff benefits so long as she continues to meet the Policy conditions for continuance of benefits;

D. That the Court award Plaintiff her attorney's fees pursuant to 29 U.S.C. § 1132(g); and;

E.  That Plaintiff be awarded any and all other contractual and/or equitable relief to which she may be entitled, as well as the costs of suit.

**Respectfully Submitted,**

This the 9th day of September, 2021

By: /s/ Anthony D. Taibi
    Anthony D. Taibi, Bar Number: 23700
    Attorney for Plaintiff
    Taibi Law Group, PLLC
    3710 University Drive, Suite 110
    Durham, North Carolina 27707
    Telephone: (919) 916-6000
    Facsimile: (919) 289-5300
    Email: *Taibi@tlgnc.com*